## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARK GOLDEN and GENEVA GOLDEN, *on behalf of themselves and all others similarly situated*, | ) ) ) | Case No. 1:20-cv-00627-TDS-LPA |
| | ) | |
| Plaintiffs, | ) ) | **JOINT MOTION FOR CLASS CERTIFICATION AND** |
| | ) | **PRELIMINARY APPROVAL OF** |
| vs. | ) | **CLASS SETTLEMENT** |
| | ) | |
| HIGGINS BENJAMIN, PLLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to Rule 23, Plaintiffs Mark and Geneva Golden, and Defendant Higgins Benjamin, PLLC, by and through their undersigned attorneys, and respectfully move the Court to enter an order:

1. Preliminarily certifying a class of individuals for settlement purposes ("the Class") as set forth in the parties' proposed settlement agreement (the "Agreement"), attached as Exhibit 1;

2. Preliminarily approving the Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure;

3. Conditionally certifying Plaintiffs as the named-representatives of the Class;

4. Conditionally certifying Plaintiffs' counsel as counsel for the Class;

5. Approving the form of the proposed class notice ("the Class Notice"), attached as Exhibit 1-A, and the parties' proposed method of distribution of the Class Notice to the Class, as set forth in the Agreement; and

1

6.     Setting a final fairness hearing to determine whether the proposed settlement is fair, adequate, and reasonable.

## I.     Introduction

Defendant is a law firm that is alleged to be a debt collector as defined by the Fair Debt Collection Practices Act ("FDCPA"). In connection with the collection of an alleged debt for homeowners association fees, Defendant sent Plaintiffs written correspondence dated April 22, 2020. The April 22, 2020 correspondence was Defendant's initial communication with respect to the debt. Thus, it was required to provide Plaintiffs with the FDCPA's validation notices. *See* 15 U.S.C. § 1692g(a). The April 22, 2020 correspondence purported to provide the required notices: "Unless you dispute the validity of the debt, or any portion, within 30 days after receipt of this letter, the debt will be assumed to be valid." Plaintiffs allege that Defendant violated 15 U.S.C. § 1692g(a)(3) because the statement fails to inform Plaintiff that the Debt will be assumed to be valid *by Defendant*.    Defendant disputes the allegations and deny that any violation of the FDCPA has occurred.

The April 22, 2020 correspondence was based on a form or template (the "Template").[1] In connection with the collection of consumer debts, Defendant sent 401 letters to natural persons who own property in the State of North Carolina within the one year period prior to the filing of Plaintiffs' original class action complaint based on the Template.[2] The Parties now move to certify Plaintiffs and their counsel as representatives of a class of individuals with

---

[1] The Template is defined as the written debt collection correspondence used by Defendant to collect consumer debts containing language substantially similar to the correspondence sent to Plaintiffs and attached as Exhibit A to the original complaint filed in the Lawsuit, Doc. 1-1.

[2] Because some letters had joint addressees (a husband and wife, for example), Defendant estimates that 802 natural persons would be the maximum class size (ie, 401 letters, each to a spousal combination).  Defendant continues to work toward identifying the exact number.

2

claims against under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., defined as follows:

> All natural persons owning property in North Carolina to whom Defendant sent an initial written collection correspondence based on the Template, between July 8, 2019 and July 8, 2020, and in connection with the collection of a consumer debt.

After informal discovery and arm's-length negotiations, the parties have reached an agreement to resolve this case whereby Defendant will create a settlement fund from which Defendant will pay the full statutory damages of $1,000.00 to Mr. Golden and the full statutory damages of $1,000.00 to Ms. Golden, as provided for in 15 U.S.C. § 1692k(a)(2). Defendant also agrees to pay Mr. and Ms. Golden an additional $500 each for their service to the Class, subject to Court approval. Defendant will also pay $4,000.00 as class damages, representing more than 1% of Defendant's net worth. *See* 15 U.S.C. § 1692k(a)(2)(B). This amount shall be distributed *pro rata* to each member of the settlement class who does not submit valid, timely requests for exclusion. Additionally, Defendant will pay the costs of administering the settlement and providing direct mail notice to each member of the Class, in an amount not to exceed $4,300.00. Defendant will separately pay Plaintiffs' attorney's fees and expenses of Plaintiffs' attorneys in an amount determined by the Court, not to exceed $20,000.00.

The Parties seek certification of the Class and preliminary approval of the settlement Agreement. The Parties and their counsel strongly believe that this settlement is fair, reasonable, and adequate, and in the best interests of the class members. This Court should accordingly enter the accompanying order granting preliminary approval of the settlement, attached as Exhibit 1-B.

## II.     Summary of the settlement

The parties' Agreement defines a settlement Class under Rule 23(b)(3) comprising all natural persons owning property in North Carolina to whom Defendant sent an initial written collection correspondence based on the Template, between July 8, 2019 and July 8, 2020, and in connection with the collection of a consumer debt.   Including Plaintiffs, the parties have identified 401 letters based on the Template in discovery.   Class Members who do not submit timely, valid requests for exclusion will receive a pro-rata share of the $4,000.00 set aside in the settlement fund. Thus, if none of the Class Members timely request exclusion, each Eligible Class Member would receive approximately $5.00-$10.00.

In addition, Defendant will separately pay $1,000.00 to each Plaintiff for statutory damages, and $500.00 to each Plaintiff for their service to the Class. Defendant also will pay the costs of notice and administration of the settlement (not to exceed $4,300.00), plus an award of attorney's fees and expenses to class counsel not to exceed $20,000.00, as determined by the Court.

The Agreement requires direct mail notice to the Class. Defendant has in its possession the names and recent addresses of each class member, and will provide the foregoing information to as the Class administrator, who will take all reasonable steps necessary to ensure that each Class Member receives direct mail notice, including updating addresses for any mail returned as undeliverable.

## III.     This Court should preliminarily certify the Class.

To certify the proposed settlement Class, Plaintiffs must satisfy each of the four requirements of Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy of representation, as well as one of the requirements Rule 23(b).  *Lucas v. GC Servs. L.P.*, 226

4

F.R.D. 337, 339 (N.D. Ind. 2005) (certifying FDCPA class). Because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied here. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### A. The requirements of Rule 23(a) are met.

#### 1. Numerosity

First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "[n]o specified number is needed to maintain a class action," *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), "classes with as few as 25 to 30 members have been found to raise the presumption that joinder would be impractical." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 477 (D. Md. 2014). However, there is a general consensus that more than 40 class members is considered sufficient. *See* Newberg, Class Actions § 3.05 at 3–25; 3B Moore's Federal Practice ¶ 23.05(1) at 23–143–45 (2d ed. 1995) (collecting cases).

Here, Defendant sent an initial written collection correspondence based on the Template, between July 8, 2019 and July 8, 2020, and in connection with the collection of a consumer debt, to at least 401 natural persons[3] owning property in North Carolina, including Plaintiffs. This satisfies the numerosity requirement.

---

[3] *See* Footnote 2 above.

### 2. Commonality

Next, commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims of Plaintiffs and the class "must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Rule 23(a)(2) does not require that all factual or legal questions raised in a litigation be common, so long as at least one issue is common to all members." *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 2000) (certifying FDCPA class). "Factual differences among the class members' cases do not violate the rule, so long as a common legal theory is shared." *Id.*

"[C]ommonality is often found in consumer fraud and related actions where standardized documents and procedures are used." *Legge v. Nextel Communs., Inc.,* No. CV 02-8676 DSF (VBKx), 2004 WL 5235587, at *5 (C.D. Cal. Jun. 25, 2004). "[B]y definition, each putative class member received a dunning letter containing the same Verification Notice. The sole and dispositive legal question is whether that Verification Notice violates the FDCPA." *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 11-78, 2011 WL 5325674, at *2 (E.D. Va. Nov. 3, 2011). Here, Defendant likewise used standardized documents and language based on the Template, which Plaintiffs allege violate the FDCPA. *See Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 103 (W.D. Va. 2000) ("Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases."). The commonality requirement is satisfied. Defendant disputes that any violation occurred.

6

### 3.    Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This "requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Smith v. Res-Care, Inc.*, No. 13-5211, 2015 WL 461529, at *5 (S.D. W. Va. Feb. 3, 2015) "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). Thus, the appropriate analysis of typicality "involves[s] a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). "To conduct that analysis, [the district court] begin[s] with a review of the elements of [the plaintiffs'] *prima facie* case and the facts on which the plaintiff[s] would necessarily rely to prove it." *Id.* The Court must "then determine the extent to which those facts would also prove the claims of the absent class members." *Id.*

Here, Plaintiffs' claims, like all Class members' claims, arise out of the receipt of a common initial written debt collection correspondence, with identical language to that which Plaintiffs allege violates the FDCPA. Plaintiffs therefore possess the same interests and suffered the same injuries as each class member. They likewise assert identical claims and seek identical relief on behalf of the unnamed class members. "[I]n seeking to prove [their] claims, [Plaintiffs] will necessarily advance the claims of the Class. This is the hallmark of typicality." *Id.*; *accord Woodard*, 191 F.R.D. at 505 ("Here, all class members' claims are grounded in an identical

7

practice and legal theory—the mailing of improper debt collection letters in violation of the FDCPA."); *Talbott*, 191. F.R.D. at 104 ("Typicality is, by definition, inherent in Talbott's class, i.e., each class member was subjected to the same FDCPA violation as Talbott when they were sent the dunning letter."). Plaintiffs' claims are typical.

### 4. Adequacy

The Court must next determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) is satisfied as long as the class representatives have sufficient interest in the case to adequately represent the class members and the attorneys representing the class are qualified and competent to conduct the litigation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). This standard is met if "the named plaintiff has interests common with, and not antagonistic to, the [c]lass' interests; and . . . the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *In re Se. Hotel Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 606-07 (W.D.N.C. 1993).

Here, Plaintiffs are consumers who represent to the Court that they have no conflicts of interest with the rest of the class members. Doc. 1 at ¶ 39. The interests of Plaintiffs are co-extensive with and not antagonistic to those of the absent class members. *Id.* at ¶ 41. Plaintiffs are adequate representative parties. *See Koepplinger v. Seterus, Inc.*, No. 1:17cv995, 2020 U.S. Dist. LEXIS 75143, at *88 (M.D.N.C. Apr. 29, 2020); *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 506 (E.D.N.C. 2000).

Plaintiffs have retained putative class counsel with experience litigating FDCPA and class action matters. *See e.g., Ogletree v. Cafe Valley Inc.*, Case No. CV-16-03881-PHX-JJT (D. AZ. Nov. 6, 2017) (appointing Thompson Consumer Law Group as class counsel in FCRA

8

action); *Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. CV-16-00362-PHX-DLR, 2016 WL 5363752, at \*4 (D. Ariz. Sept. 26, 2016) (appointing Thompson Consumer Law Group as class counsel in EFTA action); *see also Maloy v. Stucky, Lauer & Young, LLP*, No. 1:17-CV-336-TLS, 2018 WL 6444916, at \*2 (N.D. Ind. Aug. 15, 2018) (appointing Russell Thompson IV as class counsel in FDCPA class action); *Dove v. Moody, Jones, Ingino & Morehead, PA*, No. 3:15-cv-00251 (M.D. Fla. April 18, 2016) (approving class settlement of EFTA action and certifying the undersigned as Class Counsel in EFTA action). Plaintiffs and their counsel are adequate.

**B. The requirements of Rule 23(b)(3) are met.**

**1. Common questions of law and fact predominate over any potentially individualized inquiries.**

Rule 23(b)(3) is designed to promote economy and efficiency in actions that are primarily for money damages. It permits a class action to be maintained where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Supreme Court has stated this "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose of determining whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits; permit adjudication of disputes that cannot be economically litigated individually; and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire

9

class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966). Thus, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc.*, 521 U.S. at 625.

"Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims." *Smith*, 2015 WL 461529, at *6. Here, the significant common issue is whether Defendant standardized initial written correspondence with consumers violates Section 1692g(a)(3) by failing to state that it is only Defendant who may assume the debt's validity if the consumer does not timely dispute. *See Bicking*, 2011 WL 532674, at *3 ("In this matter, all of the proposed class members' claims arise from Defendants' act of mailing the dunning letter at issue. And as already established, their legal theories are identical: Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA. That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case."); *Talbott*, 191 F.R.D. at 106 ("[I]t is the use of standardized debt collection letters that ha[s] given rise to the plaintiff's claim. The questions of law and fact involved . . . relate to the use of the debt collection letters admittedly mailed by defendant to the proposed class. These common questions of law and fact surrounding the contents and mailing of these letters predominate over individual issues."). Thus, the predominance requirement is met.

### 2. A class action is the superior method of adjudication.

Finally, Rule 23(b)(3) also requires that the court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." When evaluating the superiority requirement, the Court must typically consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

10

(2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Here, the claims of Plaintiffs and the class arise from a form initial written debt collection correspondence. The language at issue was materially identical for all 401 recipients. Thus, a class action is the superior vehicle for determining the rights of the absent class members. No single member of the class has an interest in controlling the prosecution of this action because the claims of all class members are identical, as the allegations involve standardized conduct. Alternatives to a class action are either no recourse for the absent class members, or a multitude of lawsuits filed in different forums, resulting in the inefficient administration of the litigation.

Further, courts have found that "a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Smith*, 2015 WL 461529, at \*6. In *Smith*, the court found predominance under the Fair Credit Reporting Act because "statutory damages for each Class Member (ranging between \$100.00 and \$1,000.00, as set forth in 15 U.S.C. § 1681n) are small, providing little incentive for individual litigation of the Class." *Id.* Here, the FDCPA similarly limits individual statutory damages to \$1,000 for named plaintiffs and provides for only 1% of Defendant's net worth as damages to the class. 15 U.S.C. § 1692k(a)(2)(B); *see Bicking*, 2011 WL 532674, at \*4 ("class litigation provides a superior means of adjudicating the claims presented here, as the minimal recovery available to most litigants under the FDCPA gives little incentive for class members to pursue their claims individually"). Accordingly, "[t]he class action procedure is the superior method for

11

dispute resolution in this matter as the alternative mechanism, permitting individual lawsuits for statutory damages, would be costly and duplicative." *Bicking*, 2011 WL 532674, at *4.

Finally, there will be no difficulties in managing this class action since Defendant possesses the names and addresses of the members of each class, and—as contemplated by the FDCPA—their recovery will be a pro rata share of the class settlement. *See* 15 U.S.C. § 1692k(a)(2). The superiority requirement is met.

## IV. This Court should preliminarily approve the settlement as fair, reasonable, and adequate.

Rule 23(e) requires that the Court make a preliminary determination of fairness:

Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002). After the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, this Court will hold a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* Manual For Complex Litigation § 21.633-34; 4 Newberg, *supra* at § 11.25.

The Fourth Circuit has identified a number of factors to assess both the procedural and substantive fairness of a class settlement proposal: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the

12

circumstances surrounding the negotiations; (4) the experience of counsel in the area of class action litigation; (5) the relative strength of Plaintiffs' case on the merits; (6) the existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation; (8) the solvency of Defendant and the likelihood of recovery on a litigated judgment; and (9) the degree of opposition to the settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Rule 23(e) requires the Court to consider additional factors, including that the class representatives and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e). Here, the factors support approval of the settlement.

Here, the first three factors should be considered together. Within the first week of the year, the Court denied Defendant's motion to dismiss pursuant to Rule 12(b)(6). *See* Doc. 12. Due to Defendant's motion, the parties have neither conferred pursuant to Rule 26(f) nor been permitted to serve formal discovery. But in anticipation of the Court's order denying the motion, the parties participated in informal discovery so that they could negotiate the settlement for which they now seek preliminary approval.

The fourth factor—the experience of counsel—supports approval. As discussed *supra*, Mr. Thompson has significant experience in consumer litigation, including consumer class actions under the FDCPA. *See Decohen*, 299 F.R.D. at 480 ("Class counsel have significant litigation and appellate experience . . . has served as class counsel in several successful consumer rights class actions . . . [and] have attested to the fairness of the proposal in the Settlement Agreement. Accordingly, because class counsel's experience—and the other *Jiffy Lube* factors— weigh in favor of fairness, the Court will find that the settlement is fair."); *see also Rodriguez v.*

*West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The fifth through seventh factors can also be considered together. As discussed, the Court recently denied Defendant's motion to dismiss. Thus, with respect to liability, Plaintiffs believe the case is relatively strong on the merits. Defendant disputes that, but even if Plaintiffs prevail on the merits, they must also establish Defendant's net worth to determine the maximum damages to the class. *See Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1108 (9th Cir. 2018) ("In light of the statutory text and structure, we conclude that Congress intended the plaintiff to carry the burden at trial of introducing evidence of the defendant's net worth."). But given that Defendant has already agreed to pay more than its maximum class liability, continued litigation could only harm Plaintiffs and the class. *See, e.g., Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1326 (M.D. Fla. 2016) ("Applying the factors the Court must apply under Section 1692k of the FDCPA, the Court concludes in its discretion that the facts of this case call for the award of only nominal damages. The plaintiff or plaintiffs in this case, however many they may have been, would have been awarded $1.00 in statutory damages."), vacated and remanded, 706 F. App'x 529 (11th Cir. 2017); *Singleton v. Domino's Pizza*, LLC, 976 F. Supp. 2d 665, 680 (D. Md. 2013) ("Even if the Plaintiffs were to prevail on their FCRA claims at trial, it is far from certain that a jury would award the maximum . . ."); 15 U.S.C. § 1692k(a)(2) (setting maximum statutory damages, but no minimum). "Furthermore, absent final approval of the Amended Settlement Agreement, litigation of this dispute could prove to be long and expensive. In particular, the likely next steps in this case—e.g., additional discovery and dispositive motions— would require substantial time by the parties' attorneys." *Id.*; *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages [in an FDCPA action]

14

are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). These factors support approval.

The eighth factor—Defendant's solvency and the likelihood of recovery on a litigated judgment—further supports approval. As the Court is aware, we are currently in the midst of a global pandemic resulting in havoc on the country's citizens and businesses. And in addition to paying its own counsel, Defendant must pay Plaintiffs' reasonable attorney fees and costs should they ultimately prevail. Thus, the longer this matter is litigated, the more Defendant must pay to satisfy a litigated judgment. "Although there is nothing to indicate that Defendant would be unable to satisfy a judgment if one were ultimately entered, it is not clear how long it might take to resolve this lawsuit. On balance, the risks, delays, and costs associated with further litigation weigh in favor of granting final approval of the Amended Settlement Agreement." *Singleton*, 976 F. Supp. 2d at 680.

The Ninth factor supports approval as there is no opposition to the settlement at this time, and the parties anticipate few, if any, requests for exclusions. The Court should grant preliminary approval of the class settlement.

Finally, Rule 23(e)(2)(D) requires the Court to confirm that the settlement treats all class members equitably. The related Advisory Committee's Note advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). Here, the alleged violations of each class member results from Defendant mailing a

15

materially identical initial written collection correspondence suffering from the same alleged disclosure deficiencies. Thus, each has the same claim. Through the agreed settlement, each Eligible Class member will receive an equal portion of the $4,000 in agreed class damages. Likewise, the release treats each class member in the same way as all members will agree to release the same FDCPA claims. Accordingly, this factor supports preliminary approval. *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

## V.    This Court should approve the proposed notice plan.

Under Rule 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. *See In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008).

The aforementioned settlement terms are fair, adequate, and reasonable, given that class members will be given individual notice of this action and of the proposed settlement, and they will be given the opportunity to object to the settlement or exclude themselves from the settlement entirely and not be bound by the Court's judgment. The Class Notice will be sent by

16

U.S. mail to each of the members of the Class, which is the best notice practicable. The proposed Class Notice, which is attached to this motion as Exhibit 1-A, provides fair, reasonable, and adequate notice to the Class of the proposed settlement and of their rights.

The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiffs' request for statutory damages and reimbursement of her attorney's fees and expenses; and (6) directs class members to a website where they can view the relevant documents, including the complete settlement agreement. Thus, the notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen*, 299 F.R.D. at 479 ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address— and a second notice if the first was returned as undeliverable—was the best practicable notice.").

## VI.     Scheduling a final approval hearing is appropriate.

Finally, the last step in the settlement approval process is a final approval hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal with prejudice under Rule 23(e). The parties request that the Court set a date for a

17

hearing on final approval, at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

**VII. Conclusion and prayer for relief.**

The Parties respectfully request that this Court enter the accompanying Order granting preliminary approval of the above-described class action settlement.

Dated: January 29, 2021.

<div style="margin-left: 40%;">

Respectfully submitted,

s/ Russell S. Thompson, IV
Russell S. Thompson (*Pro Hac Vice*)
Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (888) 332-7252
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com

Attorneys for Plaintiffs

s/ Joshua B. Durham
Joshua B. Durham
Bell, Davis & Pitt
227 W. Trade St., Ste. 1800
Charlotte, NC 28202
(704) 502-6275
jdurham@belldavispitt.com

Attorneys for Defendant

</div>

18

## CERTIFICATE OF SERVICE

I certify that on January 29, 2021, I filed the forgoing with the U.S. District Court for the

Middle District of North Carolina using the CM/ECF system, which will send notification to

Defendant, through counsel, as follows:

Joshua B. Durham
Bell, Davis & Pitt
227 W. Trade St., Ste. 1800
Charlotte, NC 28202
jdurham@belldavispitt.com

<div align="right">

s/ Russell S. Thompson, IV
Russell S. Thompson, IV

</div>