IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK GOLDEN and GENEVA GOLDEN, )
on behalf of themselves and all )
others similarly situated, )
)
             Plaintiffs, )
)    1:20-cv-00627
     v. )
)
HIGGINS BENJAMIN, PLLC, )
)
             Defendant. )

## **FINAL ORDER AND JUDGMENT**

THOMAS D. SCHROEDER, Chief District Judge.

    Before the court is the joint motion for final approval of class settlement (Doc. 17) and a motion for attorneys' fees by Plaintiffs Mark Golden and Geneva Golden (Doc. 18). Plaintiffs and Defendant Higgins Benjamin, PLLC, through their respective counsel, entered into a Class Action Settlement Agreement ("the Agreement"), which is subject to review under Federal Rule of Civil Procedure 23.

    Following this court's denial of Defendant's motion to dismiss (Doc. 12), the parties filed their Motion for Class Certification and Preliminary Approval of Class Action Settlement Agreement (the "preliminary approval motion") on January 29, 2021 (Doc. 15), accompanied by the Agreement (Doc. 15-1).

    On February 5, 2021, upon consideration of the parties' preliminary approval motion and the record, the court entered an

order conditionally certifying class and granting preliminary approval of settlement ("the preliminary approval order"). (Doc. 16.) Pursuant to the preliminary approval order, the court (i) preliminarily certified (for settlement purposes only) a class of plaintiffs (the "Class Members") with respect to the claims asserted in this lawsuit; (ii) preliminarily approved the proposed settlement; (iii) appointed Plaintiffs as the Class Representatives; (iv) appointed Russell S. Thompson, IV of the Thompson Consumer Law Group, PC as Class Counsel for the Class Members; and (v) set the date and time of the Fairness Hearing. (See id.)

On May 3, 2021, the parties filed their Motion for Final Approval of Class Action Settlement (the "Final Approval Motion"). (See Doc. 17.) On June 4, 2021, Plaintiffs filed their Motion for Attorney Fees and Expenses (the "Fee Motion"). (See Doc. 18.)

On July 15, 2021, a Final Fairness Hearing was held in open court pursuant to Federal Rule of Civil Procedure 23, at which counsel attended via video teleconference, to determine whether this action satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be fully and finally approved by the court. The parties represent that no objections were received by them, and no objectors appeared at the hearing.

The parties have requested final certification of the Settlement Class under Rule 23(b)(3) and final approval of the proposed class action settlement. The court has read and considered the Agreement, Final Approval Motion, the Fee Motion, and the record, and hereby incorporates the definitions set forth in the Agreement. No objections to the proposed settlement have been received, and no class member has requested exclusion from the class. (Doc. 17 at 2.)

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

The court has jurisdiction over the subject matter of this action and over all settling parties hereto.

CLASS MEMBERS. Pursuant to Federal Rule of Civil Procedure 23(b)(3), this action is hereby finally certified as a class action on behalf of all natural persons owning property in North Carolina to whom Defendant sent an initial written collection correspondence based on the Template, between July 8, 2019, and July 8, 2020, and in connection with the collection of a consumer debt.

CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT. Pursuant to Rule 23, the court finally certifies Plaintiffs Mark and Geneva Golden as the Class Representatives, and Russell S. Thompson IV of Thompson Consumer Law Group, PC as Class Counsel for the Class Members.

3

NOTICES AND CLAIM FORMS. Notice was mailed to each of the Class Members. The form and method for notifying the Class Members of the settlement and its terms and conditions satisfied the requirements of Rule 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances. The court finds that the proposed notice was clearly designed to advise the Class Members of their rights.

FINAL CLASS CERTIFICATION. The court finds that this action satisfies the applicable prerequisites for class action treatment under Rule 23, namely: the Class Members are so numerous that joinder of all of them in this lawsuit is impracticable; there are questions of law and fact common to the Class Members, which predominate over any individual questions; the claims of Plaintiffs are typical of the claims of the Class Members; Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and the issues common to the Class predominate over issues affecting individual Class Members. Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy. The court finds that the settlement of this action, on the terms and conditions set forth in the Agreement and as set forth below, is in all respects

4

fundamentally fair, reasonable, adequate, and in the best interest of the Class Members, especially in light of the benefits to the Class Members; the strength (or weakness) of the alleged claims; the strength of Defendant's alleged defenses; the stage of the proceedings; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the opinion of counsel; the limited amount of any potential total recovery for the Class; and the fact that Defendant is paying the maximum statutory damages set by law.

CLASS SETTLEMENT. The Agreement, which is on file in this case, shall be deemed incorporated herein, and the proposed settlement set forth in the Agreement is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this court. The material terms of the Settlement include, but are not limited to, the following: Defendant, via the Class Administrator, shall pay Plaintiffs Mark Golden and Geneva Golden $1,000.00 each in statutory damages, pursuant to 15 U.S.C. § 1692k, and Defendant, via the Class Administrator, shall pay Plaintiffs Mark Golden and Geneva Golden $500.00 each for their representation of the Class. Defendant, via the Class Administrator, shall make payment to each of the 561 Eligible Class Members the sum of $7.13 each, representing each such person's pro rata share of the Settlement

5

Fund of $4,000.00.[1] Any unclaimed funds shall be divided and sent equally to the North Carolina State Bar for the provision of civil legal services for indigents and to the Indigent Person's Attorney Fund, N.C.G.S. § 1-267.10. Following class administration, Defendant, via the Class Administrator, shall make payment to Class Administrator of all amounts due and owing up to $4,300.00. If the cost of class administration is less than $4,300, the remaining amounts shall be divided and sent equally to the North Carolina State Bar for the provision of civil legal services for indigents and to the Indigent Person's Attorney Fund, N.C.G.S. § 1-267.10.

ATTORNEYS' FEES. The Fair Debt Collection Practices Act ("FDCPA") allows for the recovery of a "reasonable attorney's fee." See 15 U.S.C. § 1692k(a)(3). Section 1692k(a)(3) states:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court . . . .

Additionally, Rule 23(h) governs attorneys' fees in class actions and provides that a court may award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Plaintiffs represent that they have a hybrid contingency fee arrangement which requires Plaintiffs to pay attorneys' fees, at

---

[1] Plaintiffs report that the notices for 14 Eligible Class Members were returned as undeliverable.

6

hourly rates, if they prevail on their claim, but fees are waived if they do not prevail. (See Doc. 18 at 10.) As Plaintiffs have technically prevailed on their claim, their agreement with counsel requires the payment of attorneys' fees.

"It is for the district court in the first instance to calculate an appropriate award of attorney's fees." Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir. 1995). Notably, a court bears the responsibility to determine that fees are reasonable, even in the absence of any objections. See Fed. R. Civ. P. 23(h), 1993 Advisory Committee notes. As the Advisory Committee notes indicate, "[t]he agreement by a settling party not to oppose a fee application up to a certain amount . . . is worthy of consideration, but the court remains responsible to determine a reasonable fee." Id.

Plaintiffs indicate that the proper method for determining the reasonableness of attorneys' fees is the lodestar method. (Doc. 18.) The court agrees.[2]

The proper calculation of an attorneys' fee award under the lodestar method involves a three-step process. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013). First, the court must "determine

---

[2] Although courts alternatively use the "percentage of recovery" method in common fund cases, see Singleton v. Domino's Pizza, LLC, 976 F. Supp. 2d 665, 681 (D. Md. 2013), payment of Plaintiffs' attorneys is separately provided for and is not made from the settlement fund (see Doc. 15-1 at 7). Accordingly, this is not a common fund case and the court will not apply this method.

the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court applies the following factors, known as Johnson factors:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Boczar, 738 F.3d at 88 n.5. The Johnson factors most relevant to determining the reasonable number of hours are (1) the time and labor required and (2) the novelty and difficulty of the questions. AD ex rel. SD v. Bd. of Pub. Educ. of City of Asheville, 99 F. Supp. 2d 683, 690 (W.D.N.C. 1999). Time that is "excessive, redundant, or otherwise unnecessary" will be reduced or excluded to reflect the number of hours which would be properly billed to a client. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Second, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Robinson, 560 F.3d at 244. Finally, the court should award "some percentage of the remaining

8

amount, depending on the degree of success enjoyed by the plaintiff." Id.

The court must first determine whether the time expended on this case is appropriate. Plaintiffs have submitted documentation showing that, in total, 53.3 hours of attorney and paralegal time was spent on this case. (See Doc. 18-2; see also Doc. 18 at 5.) After review of the submitted timesheets, the court does not find that any of the time expended was excessive, redundant, or unnecessary, particularly as the case involved an issue of unsettled law in the Fourth Circuit. Accordingly, the court will not reduce the number of hours reported by Plaintiffs' counsel.

The court must next determine whether the hourly rate charged by Plaintiffs' counsel is reasonable. As the Fourth Circuit has recognized:

> [D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Robinson, 560 F.3d at 244 (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). In addition to consideration of specific

9

evidence regarding the prevailing market rate, the court may rely upon its own knowledge and experience of the relevant market in determining a reasonable rate. See Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994) ("[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.").

Here, Plaintiffs indicate that attorneys on this case charged at a rate between $400 and $450 per hour and paralegals at a rate of $135 per hour,[3] totaling over $20,000 in attorneys' fees.[4] In support of the reasonableness of these fees, Plaintiffs have submitted the declaration of class counsel Russell S. Thompson, IV (Doc. 18-1), and a copy of the "United States Consumer Law Attorney Fee Survey Report 2017-2018" ("the Fee Survey") (Doc. 18-3).

In his declaration, Thompson indicates, presumably based on his experience, that the fees charged are "reasonable and appropriate for the experience and competence of the attorneys for whom they are sought." (Doc. 18-1 at 4.) The Fee Survey indicates

---

[3] Specifically, Russell S. Thompson, IV, class counsel, billed 27.3 hours at an hourly rate of $450; Chris Brown, co-counsel, billed 3.4 hours at an hourly rate of $450; D. Sean Nation, former senior associate, billed 10.6 hours at an hourly rate of $450; Jose Gill, senior associate, billed 1.1 hours at an hourly rate of $400; Amorette Rinkleib, former associate and current of counsel, billed 1.2 hours at an hourly rate of $400; and seven paralegals billed 9.7 hours an hourly rate of $135, including 7 hours by the firm's former lead paralegal. (Doc. 18 at 5; Doc. 18-1.)

[4] The settlement agreement provides for payment of up to $20,000 in attorneys' fees. (See Doc. 15-1 at 7.) However, Plaintiffs have waived fees in excess of $20,000. (Doc. 18 at 5 n.1.)

that the median rate for attorneys handling class action cases in North Carolina is $392 per hour, with the 95% rate being $675 per hour. (Doc. 18-3 at 56.) By years in practice, the Fee Survey shows that attorneys in consumer law with 6-10 years of experience in North Carolina bill on average at a rate of $300 per hour while those with 11-20 years of experience bill at a rate of $375 per hour. (Id.) The Fee Survey further shows that the average billable rate for paralegals in North Carolina is $88 per hour. (Id. at 55.) The court acknowledges that the Fee Survey is somewhat outdated as it addresses average fees from 2017 to 2018.

Although Thompson indicates that the rates charged in this litigation are reasonable, he does not explain why *all* of Plaintiffs' fees are above the median fees charged according to the Fee Survey. Thompson's declaration shows that he has approximately eleven years of experience in consumer litigation and that he has significant experience in acting as class counsel in such litigation, including FDCPA claims. Given his significant experience in consumer litigation and his role as class counsel, the court will approve his rate of $450 per hour. For the remaining attorneys, however, it is unclear why their rates are uniformly above the average rates for both class action cases and for consumer litigators by years of experience, as detailed in the Fee Survey submitted by Plaintiffs. From the record, it appears that these attorneys have between seven and sixteen years of experience,

11

such that if their rates were determined by years of experience in consumer litigation, they would charge between $300 and $375 on average. However, this case is a class action lawsuit. Accordingly, the court will adjust the hourly rates for these attorneys to the median for this area in North Carolina, $392 per hour. Further, as the Fee Survey is some years old, the court will slightly increase the amount to $400 per hour. As a result, the hourly rates for Gill and Rinkleib remain unchanged. However, the rate for Nation will be reduced to $400 per hour. Additionally, Brown's rate will be reduced to $425 per hour, in light of his position as co-counsel and his years of experience.

As for the paralegals who collectively provided 9.7 hours of support to this case, their rates of $135 per hour are significantly higher than the average paralegal rate of $88 per hour in North Carolina. Even in light of the age of the Fee Survey, this difference is substantial. Accordingly, the rates for the paralegal work in this case will be reduced to $95 per hour. An exception will be made for the work of Wresh, the former lead paralegal at the firm, whose position justifies a slightly higher rate. As such, the rate for Wresh's work will be reduced to $100 per hour.

After adjusting the attorneys' and paralegal fees to the rates discussed above, the total lodestar amount represents a small reduction to $19,846.50.

The next step in the lodestar analysis requires the court to subtract fees for the hours spent on unsuccessful claims unrelated to successful ones. In this case, however, Plaintiffs brought only a single claim, and it was successful. As such, the court need not subtract any hours at this stage.

Finally, the court must evaluate the degree of success enjoyed by Plaintiffs to determine whether some percentage of the remaining amount is fair. Here, as discussed above, Plaintiffs brought only a single claim, and it was successful. Moreover, this success was achieved early in the litigation, shortly after this court's denial of Defendant's motion to dismiss. Further, under the settlement agreement, both Plaintiffs and the individual class members will receive the maximum awards allowed by statute.[5] This constitutes success even though the nature of the alleged violation was technical and there was conflicting case law on the issue. Accordingly, the court will increase the attorneys' fee award to the maximum permitted under the Agreement, $20,000. The court finds these fees to be reasonable in relation to the work expended and the degree of success obtained. The court further finds that

---

[5] The FDCPA provides that named plaintiffs in a class action may receive a damages award "not exceeding $1,000" and that all other class members may receive "the lesser of $500,000 or 1 per centum of net worth of the debt collector." 15 U.S.C.A. § 1692k(a)(2). Here, Plaintiffs will each receive $1,000 and the individual class members will receive pro rata payment from the Settlement Fund of $4,000. (Doc. 15-1 at 7.) Thompson indicates that the Settlement Fund represents greater than one percent of Defendant's balance sheet net worth. (Doc. 17-1 at 3.)

13

the expenses for which reimbursement is sought were reasonably and necessarily incurred.

OBJECTIONS AND EXCLUSIONS.  The Class Members were given a fair and reasonable opportunity to object to the settlement.  No Class Member objected to the settlement or sought to be excluded.  This Order is binding on all Class Members.

RELEASE OF CLAIMS AND DISMISSAL OF LAWSUIT.  The individual and class releases set forth in the Agreement are hereby approved.  Pursuant to the release contained in the Agreement, the claims described therein are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this Order.  This Action is hereby dismissed with prejudice as to all other issues and as to all parties and claims.  This Order, the Agreement, and the existence and nature of the Settlement are not, and shall not be construed as, an admission by Defendant of any liability or wrongdoing in this or in any other proceeding.  The court retains continuing and exclusive jurisdiction over the Parties and all matters relating to this lawsuit and/or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Order.

        /s/    Thomas D. Schroeder
        United States District Judge

July 16, 2021